## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ALLERGAN FINANCE, LLC
Morris Corporate Center III
400 Interpace Parkway
Parsippany, New Jersey 07054,

          Plaintiff,

    v.

                                          Civil Action No. 17-cv-_____

FEDERAL TRADE COMMISSION
600 Pennsylvania Avenue, N.W.
Washington, DC 20580,

          Defendant.

---

### ALLERGAN'S COMPLAINT FOR DECLARATORY JUDGMENT

Allergan Finance, LLC ("Allergan"), for its Complaint against Defendant the Federal Trade Commission ("FTC"), allege as follows:

### SUMMARY

1.    The Federal Trade Commission's flagrant forum shopping necessitates the instant action.  The FTC's filing a new lawsuit this week in the Northern District of California has forced Allergan Finance, LLC to bring this declaratory judgment action.  The FTC's California Action re-asserts claims as to the 2012 Lidoderm Settlement Agreement that the FTC previously had brought before this Court and had been ordered to re-file here pursuant to the Court's severance order of October 20, 2016.  *See* Mem. and Order, *FTC v. Endo Pharms. Inc.*, No. 16-cv-01440 (E.D. Pa.), Dkt. No. 120.  After the FTC voluntarily dismissed its claims before this Court, Allergan expected that the FTC would abide by the October 20 Order, necessitating no further action before this Court.  Regrettably, the FTC's California Action now requires Allergan

to file this action.  Here, Allergan seeks relief that tracks that sought by Watson in its pending and fully briefed Declaratory Judgment Action.  *Endo Pharms. Inc. v. FTC*, No. 16-cv-05599 (E.D. Pa.) (the "Watson Declaratory Judgment Action").

## NATURE OF ACTION

2.      This action seeks to preserve the judicial efficiency of having this Court, which is already familiar with the underlying matter, consider the threshold legal issue of whether the Federal Trade Commission Act (the "FTC Act") authorizes the FTC to bring federal court litigation—as opposed to administrative proceedings—to challenge alleged conduct that has occurred, and was completed, entirely in the past.  Allergan seeks declaratory judgment on this threshold issue, and also seeks a declaratory judgment, in the alternative, that the FTC Act does not authorize the FTC to seek disgorgement or restitution in any such litigation.  Further, Allergan seeks declaratory relief that it cannot be liable for the 2012 Lidoderm Settlement Agreement where neither Allergan entity was party to that agreement.

## THE FTC'S ORIGINAL ACTION – FILED OCTOBER 2016 IN THIS COURT

3.      Allergan plc raised these issues in this Court in motions to dismiss the related action previously filed by the FTC.  *FTC v. Endo Pharms. Inc.*, No. 16-cv-01440 (PSD) (the "Original Action"), Dkt. Nos. 69-2 at 9-23; 70-1 at 3-8; 110 at 4-19; 111 at 9-16.

4.      In the Original Action,[1] the FTC claimed that Watson Laboratories, Inc. ("Watson") had violated the antitrust laws by entering into a settlement agreement in May 2012 to resolve Hatch-Waxman patent litigation with Endo Pharmaceuticals Inc. and Endo International plc (together, "Endo") involving Endo's lidocaine-based, topical analgesic patch product, Lidoderm (the "Lidoderm Settlement Agreement").  The FTC also claimed that Endo

---

[1]     A publicly filed version of the FTC's Complaint in the Original Action is attached as Exhibit 1.

and Impax Laboratories, Inc. ("Impax") had violated the antitrust laws by entering into a settlement agreement in 2010 to resolve Hatch-Waxman patent litigation involving Endo's opioid pain medication Opana ER (the "Opana ER Settlement Agreement"), and by entering a development and co-promotional agreement (the "Development and Co-Promotion Agreement," (together referred to as the "Opana ER Agreements")).  *See* Lidoderm Settlement Agreement, Original Action Decl. (July 12, 2016), Dkt. No. 71-1, Ex. 1.

5.      The FTC had requested disgorgement or restitution in the Original Action.  The FTC also sought to impose liability on Allergan plc, even though it was not party to the 2012 Lidoderm Settlement Agreement and was not even formed at that time.

6.      Allergan plc's motions to dismiss the Original Action were fully briefed before this Court.  The FTC on October 25, 2016 voluntarily dismissed the Original Action after this Court by Order of October 20, 2016 ordered the FTC to sever its claims as to the two separate settlement agreements and re-file them before this Court.

7.      The FTC's withdrawal of the Original Complaint was a transparent effort by the FTC to prevent this Court from deciding the dispositive issues raised in these motions to dismiss.

8.      Subsequently, Watson, Endo, and Impax filed the Watson Declaratory Judgment Action seeking that this Court decide the threshold issues of whether the FTC is authorized to bring federal court litigation as to the Lidoderm Settlement Agreement.  The FTC moved to dismiss that action, and as a result, the Court is now fully briefed (for a second time) on these threshold issues and fully familiar with the matter.

### JANUARY 23, 2017 CALIFORNIA ACTION

9.      Now, the FTC has gone so far as to re-file on January 23, 2017 its claims as to the Lidoderm Settlement Agreement in the Northern District of California.  *FTC v. Allergan plc*, No.

17-cv-00312 (N.D. Cal.) (the "California Action").[2]  This will require Allergan to brief—and a different federal court to decide—a new motion to dismiss raising the same threshold issues already briefed to this Court *twice*:  in the motions to Dismiss in the Original Action, and the Watson Declaratory Judgment Action.

10.     The duplication caused by the FTC's forum shopping gambit is inefficient in the extreme.  This Court, which the FTC originally chose, is the best venue to avoid misuse of judicial, agency, and private resources because it is already familiar with the issues.  In addition, the Court has already entered judgment against and has retained jurisdiction over two of the Original Action defendants, Teikoku Pharma USA, Inc. and Teikoku Seiyaku Co., Ltd. (together, "Teikoku").

11.     This declaratory judgment action is a live controversy because the FTC has filed the California Action to pursue federal litigation based on the claims in the Original Action despite the lack of statutory authority to do so.

12.     The FTC Act does not allow the FTC to pursue allegations in federal court challenging conduct that occurred, and was completed, entirely in the *past*.

13.     In the Original Action, the FTC purported to have authority to bring its claims under Section 13(b) of the FTC Act, 15 U.S.C. § 53(b).

14.     Section 13(b) authorizes the FTC to file suit in federal court seeking an "injunction" only when a defendant allegedly "*is violating, or is about to violate*, any provision of law enforced by the Federal Trade Commission." (emphasis added).

15.     Under Section 13(b), therefore, the FTC's authority to sue in federal court for injunctive relief is limited to matters involving *ongoing* or *imminent future* conduct that creates

---

[2]    A publicly filed version of the FTC's Complaint in the California Action is attached as Exhibit 2.

a need for *prospective* relief (*i.e.*, where a party is currently violating the FTC Act or is about to do so).

16.     The California Action does not allege any actual ongoing or imminent future conduct, let alone any such conduct as to Allergan.

17.     Indeed, in the Original Action, the FTC did not allege that Allergan plc is currently violating or about to violate any law, nor does the FTC include any such factual allegations as to Allergan in the California Action.

18.     Rather, the FTC's claims against Allergan plc focused solely on the Lidoderm Settlement Agreement, which was signed in 2012, before Actavis plc was formed.  As was legally required, the parties to the Lidoderm Settlement Agreement—Allergan was not a party— filed the settlement with the FTC and the Department of Justice within days of signing it, and neither agency chose to take any action at that time.

19.     At the time the Lidoderm Settlement Agreement was signed in 2012, it was lawful under the prevailing "scope-of-the-patent" test governing the antitrust analysis of such agreements.

20.     It was not until years later, after the Supreme Court's decision in *FTC v. Actavis, Inc.*, 570 U.S. 756 (2013), which rejected the scope-of-the-patent test in favor of the rule of reason, that the FTC launched an investigation that ultimately led to the filing of the Original Action in this Court in March 2016.

21.     By the time of the Original Action, the settlement had been fully-performed, and a generic version of Lidoderm had been available to consumers for years.  In the Original Action, the FTC's Complaint recognized that any alleged harm in the market ceased long ago.

22.     Consequently, there is nothing left to enjoin.

23.     Section 13(b), therefore, does not authorize the FTC to pursue the California Action in federal court.

24.     The proper venue for the FTC to challenge the Lidoderm Settlement is through an *administrative proceeding* under Section 5(b) of the FTC Act.

25.     Section 5(b) authorizes the FTC to commence an administrative proceeding when a party allegedly "*has been* or is using any unfair method of competition." 15 U.S.C. § 45(b) (emphasis added).

26.     Such a proceeding, therefore, is the appropriate forum for challenging completed conduct in circumstances (like those presented here) in which there is nothing to enjoin. By attempting to pursue its claims in federal court in the California Action, the FTC is trying to assert authority it wishes it had, rather than following the path prescribed by Congress—an administrative proceeding under the FTC Act.

27.     Moreover, the FTC believes that, by ignoring the FTC Act and pursuing its claims in federal court, it can obtain disgorgement or restitution. The FTC is wrong.

28.     Section 13(b) does not provide for *any* monetary remedies. It instead authorizes only "injunctive relief."

29.     The plain text, structure, and history of Section 13(b)—and other provisions of the FTC Act that explicitly authorize equitable monetary remedies in different contexts—demonstrate that Congress never intended a disgorgement or restitution remedy in lawsuits like this one.

30.     Accordingly, any FTC claim for disgorgement or restitution under Section 13(b) would exceed the FTC's statutory authority.

31.     In sum, pursuant to 28 U.S.C. §§ 2201 and 2202 and Federal Rule of Civil Procedure 57, Allergan seeks a declaratory judgment that, under the FTC Act, the FTC does not have the authority to pursue the California Action in federal court.  Alternatively, Allergan seeks a declaratory judgment that Section 13(b) of the FTC Act does not authorize the FTC to seek disgorgement or restitution.  These threshold issues were raised by Allergan plc and Watson in their motions to dismiss in the Original Action, and have been fully briefed by Watson in the Watson Declaratory Judgment Action.  Allergan joins Watson in asking this Court to adjudicate the Section 13(b) issues now.  Further, Allergan seeks declaratory relief that it cannot be liable for the Lidoderm Settlement Agreement where Allergan was not party to that 2012 agreement.  Allergan plc raised this issue it its motion to dismiss in the Original Action.

## PARTIES

32.     Defendant FTC (the plaintiff in the Original Action) is an administrative agency of the United States Government, established, organized, and existing pursuant to the FTC Act, 15 U.S.C. § 41, *et seq.*, with its principal offices in Washington, D.C.  The FTC is vested with authority and responsibility for enforcing, *inter alia*, Section 5 of the FTC Act, 15 U.S.C. § 45, and is authorized under Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), to initiate court proceedings to enjoin ongoing or imminent (but not solely past) violations of any law the FTC enforces.

33.     Declaratory Judgment Plaintiff Allergan Finance, LLC was not a defendant in the Original Action but is named as a defendant in the California Action.  Allergan Finance, LLC is a for-profit Nevada corporation, with its principle place of business at Morris Corporate Center III, 400 Interpace Parkway, Parsippany, New Jersey 07054.

## JURISDICTION AND VENUE

34.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.

§§ 2201, 2202, 1331, and 1337(a).

35.     This Court has personal jurisdiction over the FTC, a federal government agency

that is active in enforcing, *inter alia*, Section 5 of the FTC Act, 15 U.S.C. § 45, in this and every

other state.  In addition, the FTC purposely availed itself of this forum by instituting the Original

Action in this Court.

36.     Venue is appropriate pursuant to 28 U.S.C. § 1391(e) in this district because, as

the FTC is present in, enforces the FTC Act in, and filed the Original Action in this district.

## FACTUAL BACKGROUND

37.     The crux of the FTC's Original Action was that the challenged agreements

(including the 2012 Lidoderm Settlement Agreement) allegedly stifled competition in the past.

The FTC's Complaint in the Original Action did not allege any ongoing violation of law or any

facts that could establish that a future violation is imminent or even likely to occur.

38.     Instead, the Original Action Complaint targeted entirely past conduct of entities

other than Allergan, involving two agreements that were fully-performed years ago, each of

which fully complied with prevailing law at the time, and neither of which Allergan was a party

to.  The California Action is based on the very same conduct, with similar allegations and claims

related to the Lidoderm Settlement Agreement.

39.     As alleged in the Original Action Complaint, the FDA first approved Lidoderm

for sale in March 1999.  *See* Original Action Compl. ¶ 98.  In November 2009, Watson notified

Endo pursuant to the Hatch-Waxman Act that Watson had filed an Abbreviated New Drug

Application ("ANDA") seeking FDA approval to market a generic version of Lidoderm based on

Watson's belief that its proposed product would not infringe patent No. 5,827,529 (the "'529

patent") and/or that the '529 patent was invalid or unenforceable. *Id.* ¶ 104.  Teikoku Pharma USA, Inc. ("Teikoku") owns the '529 patent, and Endo holds an exclusive license to the patent to sell Lidoderm in the United States. *Id.* ¶ 105.  Shortly after Watson filed its ANDA, Endo and Teikoku sued Watson for infringement of the '529 patent. *Id.* ¶ 108.  Endo later filed a separate lawsuit against Watson alleging infringement of three additional patents Endo had subsequently acquired. *Id.* ¶ 114.  Endo and Watson settled both Lidoderm patent litigations in May 2012 in the Lidoderm Settlement Agreement. *Id.* ¶ 116.

40.     The May 2012 Lidoderm Settlement Agreement licensed generic entry by Watson in September 2013, more than two years before the expiration date of the '529 patent (the latest-expiring patent Endo had asserted).  The parties agreed that for the first seven-and-a-half months, Watson's license would be partially exclusive and that Watson would pay Endo a 25% royalty on its gross profits from generic sales.  Endo further agreed that, from January to August of 2013, it would provide Watson with monthly quantities of branded Lidoderm that Watson could sell, through one of its affiliates, in competition with Endo.  Endo would provide additional supply of Lidoderm to Watson in 2014 and 2015 in the event that Watson's ANDA did not receive FDA approval, and Watson was unable to launch its generic product. Watson's ANDA was unapproved at the time the parties executed the Lidoderm Settlement Agreement, but Endo's provision of brand-name Lidoderm guaranteed that, no matter what, Watson would compete with Endo before Endo's patents expired.

41.     Pursuant to the license in the Lidoderm Settlement Agreement, Watson began marketing generic Lidoderm in September 2013 and has remained on the market since.

42.     The Lidoderm Settlement Agreement complied with the "scope-of-the-patent" test because Watson was permitted to enter the market before Endo's patent expired.

9

43.     Generics Bidco I, LLC (doing business as Qualitest Pharmaceuticals), a subsidiary of Endo, launched a generic version of Lidoderm in May 2014.  Watson's license and the Lidoderm Settlement Agreement itself terminated in October 2015, when the '529 Patent expired.

44.     In other words, the Lidoderm Settlement Agreement is now fully performed and wholly in the past.

45.     As required by the Medicare Prescription Drug, Improvement, and Modernization Act of 2003, Pub. L. No. 108–173, §§ 1111-1118, 117 Stat. 2066 (2003) (codified as amended at 21 U.S.C. § 355(j)), within days after the agreement was signed, the parties submitted the Lidoderm Settlement Agreement to the FTC and Department of Justice for review.  Neither agency objected or took action at the time.

46.     The FTC's and DOJ's refusals to take action are consistent with the reality that the agreements were lawful under the then-prevailing "scope-of-the-patent" test, under which a patent infringement settlement under the Hatch-Waxman Act was lawful if the settlement did not limit generic competition beyond the scope of the patent at issue.[3]

47.     It was not until later, after the Supreme Court in *Actavis* rejected the scope-of-the-patent test in favor of the rule of reason, that the FTC commenced the investigation that ultimately led to the Original Action.  As the FTC has itself noted, *Actavis* was a "break-

---

[3]     *See, e.g.*, *In re Ciprofloxacin Hydrochloride Antitrust Litig.*, 544 F.3d 1323, 1333-34 (Fed. Cir. 2008); *In re Tamoxifen Citrate Antitrust Litig.*, 466 F.3d 187, 213-15 (2d Cir. 2006); *Schering-Plough Corp. v. FTC*, 402 F.3d 1056 (11th Cir. 2005), *cert. denied*, 548 U.S. 919 (2006); *Valley Drug Co. v. Geneva Pharm., Inc.*, 344 F.3d 1294, 1308 (11th Cir. 2003).  Indeed, the Office of the Solicitor General opposed Supreme Court review of the Eleventh Circuit's decision in *Schering-Plough Corp.* because, among other reasons, there was no circuit split as to the appropriate standard of review for Hatch-Waxman patent litigation settlements.  *See* Br. for the United States as Amicus Curiae Opposing Cert. at *16-20, *FTC v. Schering-Plough Corp*, 548 U.S. 919 (2006) (No. 05-273), 2006 WL 1358441 (explaining that the prevailing standard was whether the agreement at issue exceeded the scope of the patent).

through" decision that "reject[ed] lower court rulings immunizing reverse-payment settlements that were within the 'scope of the patent.'"[4]

48.     Allergan has no intention to enter into any settlement agreements in the future that are not consistent with the Supreme Court's decision in *FTC v. Actavis, Inc.*, nor is there any likelihood that Allergan will do so.

## PROCEDURAL BACKGROUND

49.     The FTC filed the Original Action in this Court on March 30, 2016.

50.     On that same day, the FTC and Teikoku moved for the entry of a Stipulated Order for a Permanent Injunction.   On April 7, 2016, this Court entered the Stipulated Order and expressly "retain[ed] jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order."  Original Action Order (Apr. 7, 2016), Dkt. No. 14 at 11.

51.     On June 23 and June 24, 2016, Allergan plc and Watson filed motions to sever the Original Action into two separate actions—one for the Opana ER Agreements and one for the Lidoderm Settlement Agreement.

52.     On July 12, 2016, Allergan plc and Watson filed a motion to dismiss the Original Action in which they argued, among other things, that the FTC Act did not authorize the FTC to file a federal court action pertaining to conduct that had occurred entirely in the past and that the FTC could not seek disgorgement or restitution.  On that same day, Allergan plc also moved to dismiss on additional grounds, including because the entity currently known as Allergan plc did not even exist until May 2013, a full year after the May 2012Lidoderm Agreement was executed.

53.     On July 15, 2016, three days after being served with the motion to dismiss, the FTC represented to the Court that, if the Court were to sever the claims but decline to transfer the

---

[4]    FTC, Quo Vadis Post Actavis, at 1 (May 30, 2016), available at https://www.ftc.govinews-events/blogs/competition-matters/2016/03/quo-vadis-post-actavis.

cases to two separate jurisdictions, the FTC would "voluntarily dismiss both actions pursuant to Federal Rule of Civil Procedure 41(a)(1)" and then "file the claims related to Lidoderm in the Northern District of California, and those related to Opana ER in the Northern District of Illinois." Original Action Mem. in Opp. to Defs.' Motions to Sever (July 15, 2016), Dkt. No. 73 at 18-19.   Private plaintiff litigation is currently pending in those two jurisdictions in *In re: Lidoderm Antitrust Litigation*, No. 14-md-2521 (N.D. Cal.) (pending since April 3, 2014), and *In re: Opana ER Antitrust Litigation*, No. 14-cv-10150 (N.D. Ill.) (pending since December 12, 2014).

54.     On October 20, 2016, this Court granted the motion to sever the Original Action, but rejected the FTC's informal request to transfer the severed actions to the Northern District of California and Northern District of Illinois.   Original Action Mem. (Oct. 20, 2016), Dkt. No. 119 at 13.   The Court expressed concern that the FTC's plan to withdraw the Original Action and re-file in other courts was blatant "forum shopping," and it warned that if the FTC were to voluntarily dismiss its claims and re-file elsewhere, the Court would entertain Watson and Endo's "motions for costs and counsel fees relating to the [O]riginal [A]ction." *Id.*   The FTC was ordered to file two complaints with this Court:  (i) an amended complaint against Watson and Endo relating to the Lidoderm Settlement Agreement; and (ii) a new complaint against Endo and Impax relating to the Opana ER Agreements.

55.     Undaunted, instead of filing two new complaints, as this Court had ordered, the FTC purported to voluntarily dismiss the Original Action on October 25, 2016.

56.     On October 26, 2016, Watson, Endo, and Impax filed the Watson Declaratory Judgment Action seeking declaratory judgment on threshold issues, including: (i) whether Section 13(b) of the FTC Act authorizes the FTC to pursue an action in federal court against

12

Watson involving claims based on, or arising from, the Lidoderm Settlement Agreement; and (ii) whether Section 13(b) of the FTC Act authorizes the FTC to seek disgorgement or restitution against Watson based on the Lidoderm Settlement Agreement.

57.     On January 23, 2017, the FTC carried out its threat to disregard this Court's October 20, 2016 Order and re-filed its action in the Northern District of California where the private litigation related to the Lidoderm Settlement Agreement is pending, rehashing its allegations about the Lidoderm Settlement Agreement. *See* California Action Compl. ¶¶ 34-108. In the California Action, the FTC will face the same threshold issues on a motion to dismiss that it faced in this Court, requiring duplicative briefing, argument, and judicial review.  Presently, this Court has before it the Watson Declaratory Judgment Action on exactly these threshold issues.  And, this Court also remains involved in, and retains at least partial jurisdiction over, this matter given the Stipulated Order entered with regard to Teikoku.

58.     It would be far more efficient for this Court (which has already been fully briefed twice) to decide the issues raised here in Allergan's Complaint for Declaratory Judgment, which largely track the issues briefed to in the Watson Declaratory Judgment Action and the motion to dismiss in the Original Action.

59.     If the Court were to determine that the FTC is not authorized by the FTC Act to bring its claims challenging wholly past conduct in federal court, then the FTC would not be able to continue to disregard the Court's orders by pursuing its claims in the California Action.

### THE FTC HAS NO AUTHORITY TO BRING A FEDERAL
### ACTION CONCERNING CONDUCT WHOLLY IN THE PAST

60.     A federal agency's power to act "is limited to the authority delegated by Congress." *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988).

61.     In Section 13(b) of the FTC Act, Congress delegated to the FTC authority to challenge only ongoing or future violations of law in federal court.  Section 13(b) does not authorize the FTC to bring a federal lawsuit alleging only past violations.

62.     Section 13(b) applies only to ongoing or future violations of law.  Section 13(b) allows the FTC to sue for an injunction in federal court only when the agency has reason to believe that an entity "*is violating*, or is *about to violate*, any provision of law enforced by the Federal Trade Commission." 15 U.S.C. § 53(b) (emphases added).  Congress' use of the present and future tenses demonstrates Section 13(b)'s forward-looking application.

63.     Congress' use of the present and future tenses demonstrates Section 13(b)'s forward-looking application.

64.     As described above, the Lidoderm Settlement Agreement is wholly past conduct.  Thus, with respect to the Lidoderm Settlement Agreement, neither Allergan nor Watson "is violating" or is "about to violate" any law.  In addition, the challenged conduct will not recur at any time in the future.

65.     The Original Action Complaint contained no factual allegations suggesting that any Original Action defendant "is violating" or is "about to violate" any law, 15 U.S.C. § 53(b), or even that the challenged conduct is likely to recur at any time in the future.

66.     With respect to Lidoderm, the Original Action Complaint alleged that Endo, Watson, and Teikoku violated the antitrust laws by "entry into an unlawful agreement" in 2012 that impeded generic competition "until September 2013." *Id.*, Counts III and IV.  The agency further alleged that the 2012 agreement unlawfully restricted Endo's ability to market generic lidocaine patches "until May 2014." *Id.*, Counts V and VI.

67.     The Lidoderm Settlement Agreement has been fully performed and the alleged

conduct occurred entirely in the past.

68.     Similarly, the FTC's alleged anticompetitive effect arising from the Lidoderm Settlement occurred entirely in the past.

69.     It is undisputed that generic entry on Lidoderm occurred three years ago.

70.     There is no conceivable injunctive restraint that could be imposed now as a result of the California Action that would change when generic entry occurred.

71.     Put simply, there is no ongoing or threatened conduct to enjoin.

72.     Section 13(b), therefore, does not authorize the FTC to pursue the California Action.

73.     Thus, the FTC lacks statutory authority to pursue the California Action because Section 13(b) of the FTC Act does not authorize the FTC to bring a federal lawsuit alleging only past violations.

74.     Accordingly, Allergan requests that this Court enter a declaratory judgment that the FTC lacks statutory authority to pursue litigation in federal court based on, or arising out of, the Lidoderm Settlement Agreement.

### THE FTC ACT DOES NOT AUTHORIZE THE FTC TO SEEK DISGORGEMENT OR RESTITUTION

75.     Section 13(b) does not permit the FTC to seek disgorgement or restitution either.

76.     Section 13(b)'s plain text authorizes only forward-looking injunctive relief, not the backward-looking remedies of disgorgement or restitution.

77.     This limitation is evident from Section 13(b)'s very title: "Temporary restraining orders; preliminary injunctions."  The statute authorizes the FTC to "bring suit in a district court of the United States *to enjoin*" ongoing or future conduct prohibited by laws within the FTC's jurisdiction.  15 U.S.C. § 53(b) (emphasis added).  The FTC may bring such an action only when

it concludes that "*enjoining*" the challenged act or practice "would be in the interest of the public." *Id.* (emphasis added). Section 13(b) thus permits the Court to grant "a temporary restraining order or a preliminary *injunction*," where appropriate. *Id.* (emphasis added). The FTC further "may seek, and after proper proof, the court may issue, a permanent *injunction*." *Id.* (emphasis added). Another provision of the FTC Act characterizes Section 13(b) as "relating to *injunctive* relief." 15 U.S.C. § 56(a)(2)(A) (emphasis added).

78.     Section 13(b)'s words are clear: They authorize only preliminary or permanent injunctive relief and nowhere mention any other form of relief—disgorgement, restitution, or otherwise.

79.     That omission is dispositive because an injunction fundamentally differs from disgorgement or restitution.

80.     The structure of the FTC Act further confirms that Section 13(b) does not authorize disgorgement, restitution, or other monetary relief. In contrast to Section 13(b), Section 19 of the FTC Act, enacted only two years after Section 13(b) became law, expressly authorizes the FTC to seek monetary and other relief for certain types of conduct not applicable here. Under Section 19(b), entitled "Nature of relief available," the court in a Section 19 action may grant "such relief as the court finds necessary to redress injury to consumers or other persons," which "may include, but shall not be limited to, . . . the refund of money" and "the payment of damages." 15 U.S.C. § 57b(b). Likewise, Section 5(*l*) of the FTC Act permits the FTC to bring actions seeking civil penalties when parties violate final FTC orders. 15 U.S.C. § 45(*l*). [5] Unlike Section 13(b), Section 5(*l*) empowers courts "to grant mandatory injunctions

---

[5]   Neither Section 19 nor Section 5(*l*) applies to the conduct that is the subject of the California Action.

*and such other and further equitable relief as they deem appropriate* in the enforcement of such final orders of the Commission." *Id.* (emphasis added).

81.    This Court should reject the FTC's effort to expand its powers beyond those permitted by Congress, and should apply Section 13(b) in accordance with its text, structure, and history.

82.    Therefore, in the alternative, Allergan requests a declaratory judgment that the FTC lacks the authority under Section 13(b) to seek disgorgement or restitution based on any claim arising out of the Lidoderm Settlement Agreement.

## LIABILITY CANNOT BE ATTRIBUTED TO A CORPORATION THAT DID NOT TAKE PART IN THE ALLEGED ANTICOMPETITIVE CONDUCT

83.    Liability for any claims concerning the Lidoderm Settlement Agreement cannot be attributed to Allergan Finance, LLC.  Allergan Finance, LLC was not a party to the Lidoderm Settlement Agreement.  It is not disputed that the Agreement was signed by and on behalf of Watson Laboratories, Inc.  *See* Lidoderm Settlement Agreement, Original Action Decl. (July 12, 2016), Dkt. No. 71-1, Ex. 1 at 25.  Allergan Finance, LLC cannot be liable, directly or indirectly, for the 2012 Lidoderm Settlement Agreement.

84.    To the extent that the FTC may argue that Allergan Finance, LLC is liable for Watson Laboratories, Inc.'s conduct because Allergan Finance, LLC is somehow a continuation of Watson Laboratories, Inc., this is unavailing, including because Watson Laboratories, Inc. remained a separate and distinct corporation that was sold as a going concern in 2016 to Teva Pharmaceuticals Ltd ("Teva") in a transaction reviewed and approved by the FTC.  Similarly, to the extent that the FTC argues that Allergan Finance, LLC is liable because Watson Pharmaceuticals, Inc. "played a significant role" in the Lidoderm Settlement Agreement by permitting its corporate officers to act on behalf of Watson in negotiating and signing the

agreement, *see* Original Action Compl. ¶ 17, this argument has no merit under the law.  It is hornbook law that directors and officers of a parent company may also act as directors and officers on behalf of the subsidiary—effectively wearing a different "hat"—without the dual role raising any concerns regarding corporate separateness or supporting piercing of a veil. *See, e.g., United States v. Bestfoods*, 524 U.S. 51, 69 (1998).

**COUNT I**
**(Declaratory Relief:  Section 13(b) Does Not Authorize**
**A Federal Court Action For Purely Past Conduct)**

85.     Allergan incorporates by reference paragraphs 1 through 84 as if set forth fully above.

86.     A justiciable and actual controversy exists because the FTC has filed and then purported to voluntarily dismiss its Original Action and has re-filed its claims against Allergan with respect to the Lidoderm Settlement Agreement in the California Action.

87.     Allergan has a practical interest in the declaration of the existence or nonexistence of the FTC's power to bring the claims asserted against them.

88.     Allergan seeks a declaratory judgment that Section 13(b) of the FTC Act does not authorize the FTC to pursue an action in federal court against Allergan involving claims based on, or arising from, the Lidoderm Settlement Agreement.

**COUNT II**
**(Declaratory Relief:  Section 13(b) Does Not Authorize Disgorgement Or Restitution)**

89.     Allergan incorporates by reference paragraphs 1 through 88 as if set forth fully above.

90.     A justiciable and actual controversy exists because the FTC has filed and then purported to voluntarily dismiss its Original Action and has re-filed its claims (including claims

for disgorgement and restitution) against Allergan with respect to the Lidoderm Settlement Agreement in the California Action.

91.     Allergan has a practical interest in the declaration of the existence or nonexistence of the FTC's power to seek disgorgement and/or restitution.

92.     Allergan also seeks a declaratory judgment that Section 13(b) of the FTC Act does not authorize the FTC to seek disgorgement or restitution against Allergan based on the Lidoderm Settlement Agreement.

## COUNT III
### (Declaratory Relief:  Liability Cannot Be Attributed To A Corporation That Did Not Take Part In The Alleged Anticompetitive Conduct)

93.     Allergan incorporates by reference paragraphs 1 through 92 as if set forth fully above.

94.     A justiciable and actual controversy exists because the FTC has filed and then purported to voluntarily dismiss its Original Action and has re-filed on January 23, 2017 its claims with respect to the Lidoderm Settlement Agreement against Allergan plc and Allergan Finance, LLC in the California Action.

95.     Allergan has a practical interest in the declaration that it is not liable for the Lidoderm Settlement Agreement where it did not sign the agreement and where liability appears to be premised on notions of derivative or imputed liability based on Allergan's purported role as a successor company.

96.     Allergan seeks a declaratory judgment that liability for alleged anticompetitive conduct cannot be attributed to Allergan as a corporation that did not take part in the alleged conduct, and/or did not even exist at the time of the conduct.

**PRAYER FOR RELIEF**

WHEREFORE, Allergan respectfully requests a declaratory judgment that Section 13(b) of the FTC Act does not authorize the FTC to pursue an action in federal court against Allergan involving claims based on, or arising from, the Lidoderm Settlement Agreement.

In the alternative, Allergan respectfully requests a declaratory judgment that Section 13(b) of the FTC Act does not authorize the FTC to seek disgorgement or restitution against Allergan based on the Lidoderm Settlement Agreement.

Allergan further respectfully requests a declaratory judgment that Allergan is not liable, directly or indirectly, for the claims in the Original Action or in the California Action arising from the Lidoderm Settlement Agreement.

Finally, Allergan respectfully requests that the Court award such other relief as it deems just and proper.

Dated:  January 27, 2017

Respectfully Submitted,
/S/ January Kim

January Kim (321310)
**WHITE & CASE LLP**
701 Thirteenth Street, N.W.
Washington, DC 20005
Tel: (202) 626-3600
Fax: (202) 639-9355
januarykim@whitecase.com

Edward D. Rogers (69337)
Matthew I. Vahey (315920)
**BALLARD SPAHR LLP**
1735 Market Street , 51st Floor
Philadelphia, Pennsylvania 19103
Tel: (215) 864-8500
Fax: (215) 864-8999
rogers@ballardspahr.com
vaheym@ballardspahr.com

OF COUNSEL:

Peter J. Carney
David R. Courchaine
**WHITE & CASE LLP**
701 Thirteenth Street, N.W.
Washington, DC 20005
Tel: (202) 626-3600
Fax: (202) 639-9355
pcarney@whitecase.com
dcourchaine@whitecase.com

Jack E. Pace III
Bryan D. Gant
**WHITE & CASE LLP**
1155 Avenue of the Americas
New York, New York 10036
Tel: (212) 819-8200
Fax: (212) 354-8113
jpace@whitecase.com
bgant@whitecase.com

*Counsel for Allergan Finance, LLC*